IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN LIGHTHOUSE RESOURCES INC., *et al.*, Debtor. | : | Chapter 11<br>Bankr. No. 20-13056 (CTG) |
| LIGHTHOUSE RESOURCES INC., Plaintiff, v. | : | Adv. Proc. No. 24-50144 (CTG) |
| ATLANTIC SPECIALTY INSURANCE COMPANY, Defendant. | : | Misc. No. 26-61-CFC |

L. Katherine Good, Jesse L. Noa, James R. Risener III, Hannah L. Paxton, Potter Anderson & Corroon LLP, Wilmington, DE,

*Counsel for Plaintiff.*

Ronald S. Gellert, Gellert Seitz Busenkell & Brown, LLC, Wilmington, DE; John E. Sebastian, Brian C. Padove, Watt, Tieder, Hoffar & Fitzgerald, LLP, Chicago, IL,

*Counsel for Defendant.*

**MEMORANDUM OPINION**

September 29, 2026
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE

## I. INTRODUCTION

Before the Court is the motion (D.I. 1) (the "Motion") filed by Atlantic Specialty Insurance Company ("Atlantic") as defendant in the above-captioned adversary proceeding[1] brought by Lighthouse Resources Inc. ("Lighthouse"). By the Motion, Atlantic seeks (1) leave to appeal the Bankruptcy Court's January 28, 2026 interlocutory order (Adv. D.I. 133) (the "Order") which denied Atlantic's motion for leave to amend its counterclaim on the basis that amendment would be futile, for the reasons set forth in its accompanying letter ruling (Adv. D.I. 132) (the "Letter Ruling"); and (2) to the extent that the Court grants leave to appeal the interlocutory Order, a stay of the Adversary Proceeding pending the outcome of the appeal. For the reasons set forth herein, the Motion will be denied.

## II. BACKGROUND

Lighthouse is involved in the oil and gas business, including coal mining. In 2014, Lighthouse obtained surety bonds from Atlantic, which insured Lighthouse's obligations to honor state and federal regulations governing reclamation of mines, which, as the Bankruptcy Court explained, "is essentially the rehabilitation of land

---

[1] The docket of the adversary proceeding, captioned *Lighthouse Resources Inc. v. Atlantic Specialty Insurance Co.*, Adv. No. 24-50144 (CTG) (Bankr. D. Del.) (the "Adversary Proceeding"), is cited herein as "Adv. D.I. __," and the docket of the chapter 11 case, captioned *In re Lighthouse Resources Inc.*, No. 20-13056 (CTG) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

after coal mining activities have stopped." (Letter Ruling at 1.) On December 3, 2020, Lighthouse filed a voluntary petition under chapter 11. On March 10, 2021, Lighthouse's plan of reorganization (Bankr. D.I. 435, Ex. A) (the "Plan") was confirmed. The Plan incorporated a series of agreements pursuant to which a post-bankruptcy trust would conduct the reclamation work required with respect to various coal mines, and the work would be financed, in part, by the sureties' (including Atlantic's) release of collateral that had been posted to secure the bonds. (Letter Ruling at 1-2.)

Atlantic takes the position that Lighthouse failed to meet its obligation to oversee the work of the reclamation trust in performing the reclamation. Atlantic contends that this may leave it facing exposure to the regulators for whose benefit it issued the surety bonds. Atlantic therefore sent a termination notice indicating that it would not release its *pro rata* share of the collateral to the fund that pays for the reclamation work. (*Id.* at 2.)

On October 8, 2024, the Bankruptcy Court granted Lighthouse's motion to reopen its bankruptcy case, and, the following day, Lighthouse filed its Complaint alleging that Atlantic had breached the parties' agreements by failing to release the collateral. (Bankr. D.I. 662, Adv. D.I. 1.) On November 13, 2024, Atlantic filed its answer and counterclaims, along with a third-party complaint against non-party Black Butte. (Adv. D.I. 18, 19.) Lighthouse and Black Butte respectively moved to dismiss

Atlantic's counterclaims and the third-party complaint. In July 2025, the Bankruptcy Court issued a bench ruling and accompanying order dismissing the counterclaim and third-party complaint for failing to state a claim upon which relief may be granted. (Adv. D.I. 95 ("7/1/25 Hr'g Tr.") at 4; Adv. D.I. 97.)

In so ruling, the Bankruptcy Court recognized that in a breach of contract claim with unambiguous contract provisions, "the role of the Court, of course, is simply to give effect to the language of the agreements." (7/1/25 Hr'g Tr. at 10 (citing *Axiom Inv. Advisors, LLC by and through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (explaining "if the pleading is sufficient and the plaintiff has an arguable claim under the contract, then the claim should not be dismissed. … However, if the relevant contract provisions are unambiguous and plaintiff has no claim under them, then the claim should be dismissed")). Applying this principle, the court concluded that both claims fail on their merits since "neither … asserts specific facts that would amount to a breach of contract." (*Id.*)

Atlantic's counterclaim asserted three basic theories: (1) that Lighthouse Resources failed to supervise the reclamation efforts adequately, (2) that it failed to secure sufficient contribution from Black Butte, and (3) that it failed to make adequate progress in accordance with the budget it initially filed. (*See* Adv. D.I. 18 at 33-45.) Atlantic contended that these failures either constituted breaches of the operative agreements or induced Atlantic to release collateral into the reclamation

trust prematurely. (7/1/25 Hr'g Tr. at 10.) The Bankruptcy Court, however, dismissed the counterclaims on the ground that "[n]one of the provisions of the various agreements cited by Atlantic impose an affirmative obligation on Lighthouse to fund the trust, to ensure that certain budget milestones are met before collateral is released, or to secure a funding from Black Butte, nor do the agreements condition the release of collateral on adherence to budget performance." (*Id.* at 11.) As a result, "in light of the clear language of the documents, [the Bankruptcy Court] simply [did not] see how the facts alleged even accepting those facts as true, give rise to a claim of breach of contract in light of the contractual language." (*Id.* at 12.)

On October 6, 2025, Lighthouse filed its Amended and Supplemented Complaint (Adv. D.I. 115) (the "Complaint"). Atlantic filed its answer (Adv. D.I. 122) and a motion (Adv. D.I. 123) (the "Motion for Leave to Amend Counterclaim"), which alleged, again, breach of contract. Following briefing (Adv. D.I. 126, 127), the Bankruptcy Court issued its Letter Ruling and Order denying the Motion for Leave to Amend Counterclaim on the basis that amendment would be futile, finding that, even when talking all factual allegations in the proposed amended counterclaim as true and viewing them in the light most favorable to Atlantic, the counterclaim (and third-party complaint) still failed to state a claim upon which relief could be granted. (*See* Adv. D.I. 132.) The Letter Ruling explained that, "[a]t bottom, Atlantic Specialty's claims boil down to a complaint that Lighthouse Resources has failed to implement

the reclamation plan successfully." (*Id.* at 11.) As the Bankruptcy Court explained, however, none of the cited provisions of the operative agreements impose such an obligation on Lighthouse that Atlantic could enforce. (*See id.* at 12.) As a result, the Motion for Leave to Amend Counterclaim was denied as futile.[2]

Shortly thereafter, Lighthouse moved for partial summary judgment as to Atlantic's liability. (Adv. D.I. 134.) On February 13, 2026, Atlantic filed a motion for stay. (Adv. D.I. 143.) At oral argument on that motion, counsel for Atlantic explained that what Atlantic sought was "a stay not of the [O]rder [denying the Motion for Leave to Amend Counterclaim] that [the Bankruptcy Court] entered, but of the entire case." (Adv. D.I. 165 ("2/24/26 Hr'g Tr.") at 4.) In Atlantic's view, Lighthouse's motion for partial summary judgment presented what could be a "determining motion about the action," such that Atlantic could be prejudiced should the motion for partial summary judgment be granted while its motion for leave to appeal the interlocutory Order remained pending. (*Id.* at 5-6.) The Bankruptcy Court ultimately rejected that argument, finding that unless and until Atlantic's motion for leave was granted by this Court, the only prejudice Atlantic faced was "having to prepare for [the motion for partial summary judgment] and do the things that are

[2] With respect to Black Butte, the Bankruptcy Court found that, while the cited provisions described "how Black Butte might contribute funds and how those funds would subsequently be allocated[,] … none of the[] provisions impose[d] an obligation on Black Butte to make any distributions at all." (Adv. D.I. 132 at 16.)

necessary to deal with [the motion]." (*Id.* at 6.) Nor did the Bankruptcy Court believe it appropriate, in the exercise of its ordinary discretion regarding the management of its docket, to stay the Adversary Proceeding. (*See id.* at 13-14.) Accordingly, on February 24, 2026, the Bankruptcy Court denied the stay motion. (Adv. D.I. 154.)

On February 11, 2026, Atlantic filed its Notice of Interlocutory Appeal (Adv. D.I. 139) together with the instant Motion. The Motion contains a separate request to stay the Adversary Proceeding pending the interlocutory appeal. D.I. 1 at 17-19. The Motion does not seek review of any ruling concerning Black Butte. *See id.* at 3.

On May 13, 2026, the Bankruptcy Court issued its order granting partial summary judgment in favor of Lighthouse as to Atlantic's liability on all five counts of the Complaint (Adv. D.I. 189) for the reasons set forth in its accompanying May 5, 2026 letter ruling (Adv. D.I. 186). On June 4, 2026, the Bankruptcy Court issued a scheduling order to govern the remainder of the action. (Adv. D.I. 200.) Discovery is ongoing. (Adv. D.I. 201-204, 206-208, 213-215.)

The Motion is fully briefed. D.I. 1, 3. No party requested oral argument.

## III. JURISDICTION AND APPLICABLE STANDARDS

This Court has jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28

U.S.C. § 158(a)(3). Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. *See id.* "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).

Under the standards of section 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law as to which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue."

*Katz*, 496 F.2d at 754.

With respect to the interlocutory Order that Atlantic seeks leave to appeal, "[d]istrict courts may deny leave to amend where, *inter alia*, amendment would be futile." *In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 112 (3d Cir. 2025). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (internal quotations and citations omitted).

## IV. ANALYSIS

### A. Motion for Leave to Appeal

#### 1. Controlling Question of Law

"A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 at 755. "'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally. And on the practical level, saving of time of the district court and of expense to the litigants [has been] deemed . . . to be a highly relevant factor." *Id.* (internal citation omitted).

As Lighthouse points out, "under [Federal Rule of Civil Procedure] 15,[3] the bankruptcy court is empowered with 'discretion to grant or deny motions for leave to amend.'" D.I. 3 at 11 (quoting *In re United Tax Grp., LLC*, 2018 WL 1135496, at *3

---

[3] Federal Rule of Civil Procedure 15(a)(2) is made applicable to the Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7015.

(Bankr. D. Del. Feb. 28, 2018)). "Decisions committed entirely to the district court's discretion rarely present 'a controlling issue of law' and are generally not appropriate for certification under § 1292(b)." *Stanley v. St. Croix Basic Servs., Inc.*, 2008 WL 4861448, at *2 (D.V.I. Nov. 3, 2008) (citation omitted); *see also* 16 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3930 ("Ordinarily district courts should refuse to certify [discretionary decisions], not only because of the low probability of reversal, but also because the recognition of discretion results from a studied determination that appellate courts should not interfere").

Atlantic correctly points out that the Third Circuit reviews *de novo* the underlying legal conclusion whether the proposed amendments to the complaint would have been futile. *Id.* at 11. *See In re Walmart Inc. Sec. Litig.*, 151 F.4th at 112 ("We ordinarily review denial of leave to amend for abuse of discretion, ... but we review *de novo* 'the underlying legal conclusion whether the proposed amendments to the complaint would have been futile'") (quoting *U.S. ex rel. Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp.*, 690 F.3d 951, 957 (8th Cir. 2012)). But the fact that the underlying legal conclusion is reviewed *de novo* does not render the denial of leave to amend a controlling issue of law appropriate for interlocutory review. *See Kisaka v. University of Southern California*, 2014 WL 12850259, at *3 (C.D. Cal. Feb. 20, 2014) (no controlling issue of law warranting interlocutory appeal in denying leave to amend as, among other reasons, futile); *Sampath v. Concurrent Technologies Corp.*,

2006 WL 3231954, at *1 (W.D. Pa. Nov. 7, 2006) (denying certification of interlocutory appeal of denial of leave to amend as futile and prejudicial as the appeal did not present a controlling issue of law). That is especially so here because the Order denying Atlantic's Motion for Leave to Amend Counterclaim is based on the Bankruptcy Court's determination that amendment would be futile based on the parties' unambiguous agreements. *See* Adv. D.I. 132 at 5-6. "While the meaning of a contract is generally considered a question of law for the court, a question of contract interpretation typically is not a 'controlling question of law' that serves as a basis for interlocutory appeal." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 426 F. Supp. 2d 125, 128 (S.D.N.Y. 2005); *see also FHJ 86 Partners v. Charter Oak Fire Insurance Company*, 2010 WL 11712790, at *2 (S.D.N.Y. 2010) (decision denying leave to amend based on interpretation of insurance policy does not involve a controlling question of law within the meaning of § 1292(b)); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 94 (S.D.N.Y.2002) ("Differences over contract construction are not the sort of 'controlling question of law' that normally gives rise to interlocutory certification"); *Ahrenholz v. Board of Trustees of the Univ. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000) ("the question of the meaning of a contract, though technically a question of law when there is no other evidence but the written contract itself, is not what the framers of section 1292(b) had in mind"); *Arbor Global Strategies LLC v. Xilinx, Inc.*, 2020 WL 6384205, at *2 n.3 (D.

Del. Oct. 30, 2020) (same).

Atlantic argues that "whether to grant or deny leave to amend a pleading under 28 U.S.C. § 1292(b) has been held to involve a controlling question of law on which there is substantial ground for difference of opinion." D.I. 1 at 12 (citing *Whalen v. W.R. Grace & Co.,* 56 F.3d 504, 506 (3d Cir. 1995)). In *Whalen*, however, the court considered whether an ex-employee could join a class action after failing to timely assert a claim to the EEOC. *See Whalen,* 56 F.3d at 506. The issue presented for interlocutory appeal in that case arose in the context conflicting decisions from two lines of case law, creating "a controlling question of law on which there is a substantial ground for difference of opinion[.]" 28 U.S.C. § 1292(b). Thus, *Whalen* does not provide that denials of leave to amend readily meet Section 1292(b)'s high bar.

### 2. Substantial Ground for Difference of Opinion

"The 'controlling question of law' also must be one as to which there is 'substantial ground for difference of opinion.'" *Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re Essar Steel Minn. LLC),* 607 B.R. 409, 416 (D. Del. 2019) (quoting 28 U.S.C. § 1292(b)). "This calls for more than mere disagreement with the ruling of the Bankruptcy Court." *Id.* To satisfy this standard, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (3d

Cir. 1998). "Conflicting and contradictory opinions may provide substantial grounds for a difference of opinion." *In re Essar Steel,* 607 B.R. at 416. "Additionally, the absence of controlling law on a particular issue can constitute substantial grounds." *Id.* This factor may also be met when "the bankruptcy court's decision is contrary to well-established law." *Id.* (quoting *In re Marvel Entm't Grp., Inc*., 209 B.R. 832, 837 (D. Del. 1997)).

Here, there is no "genuine doubt as to the correct legal standard." *Hulmes,* 936 F. Supp. at 208. As Atlantic admits, whether the proposed amendment of its counterclaim is futile or not is determined by applying the standard under Federal Rule of Civil Procedure 12(b)(6).[4] *See* D.I. 1 at 13. Atlantic merely disagrees with the Bankruptcy Court's determination that the unambiguous contracts do not contain the rights Atlantic relies upon for its proposed amended counterclaim. That disagreement does not justify an interlocutory appeal. *See Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*, 2021 WL 6098288, at *3 (W.D. Pa. Dec. 23, 2021) ("National's dissatisfaction with one of the Court's three independent justifications for denying its motion for leave to amend falls short of this standard and its motion for an interlocutory appeal will be denied.").

---

[4] Rule 12(b)(6) is made applicable to the Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

### 3. Whether Immediate Appeal Will Materially Advance Termination of Litigation

"A Section 1292(b) certification materially advances the litigation's ultimate termination where the interlocutory appeal will eliminate the need for trial, complex issues, or issues that make discovery more difficult and more expensive." *In re Dwek*, 2011 WL 487582, at *4 (D.N.J. 2011). On the other hand, where "the proposed certification would not only complicate matters before this Court but would also encourage piecemeal appeals," denial of a request for interlocutory appeal is warranted. *Nat'l Liab. & Fire Ins. Co.*, 2021 WL 6098288, at *3.

An interlocutory appeal would not materially advance the ultimate determination in this litigation. This Adversary Proceeding presents narrow issues for the Bankruptcy Court's consideration: whether Atlantic is liable for its breach under the parties' agreements and if so, what are the related remedies and damages. At this point, the Bankruptcy Court has decided liability (*see* Adv. D.I. 189), and all that remains is a determination of damages. Thus, an immediate appeal will not serve "the clear intention of the sponsors [of § 1292(b)] to avoid a wasted trial." *Katz*, 496 F.2d at 755. Rather, granting the Motion and certifying interlocutory appeal at this point would force the parties to re-litigate already decided issues alongside the remaining issues in the case, and discovery would be expanded into fact-intensive issues, potentially wasting both the parties' and the Bankruptcy Court's time and resources. The orderly progression of litigation, including the dismissal of Atlantic's

counterclaims and the denial of its motion for leave to amend, is not the type of extraordinary circumstance where an interlocutory appeal would advance or terminate this action. Ultimately, Atlantic has failed to point to "any circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review." *In re Magic Rests., Inc.*, 202 B.R. 24, 26-27 (D. Del. 1996).

### B. Motion for Stay

As interlocutory appeal of the Order is not warranted, Atlantic's request for a stay will be denied as moot.

## V. CONCLUSION

For the reasons explained above, the Court will deny the Motion. An appropriate order follows.